IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DEVORIS NEWSON,<br>     Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | |
| CHASE BANK,<br>RAIZ FEDERAL CREDIT UNION, EL<br>PASO POLICE DEPARTMENT, EL<br>PASO SHERIFF'S DEPARTMENT,<br>GABRIEL WALDO, WALMART,<br>VERIZON WIRELESS, and AT&T,<br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-24-CV-00073-DB** |

## ORDER

On this day, the Court considered the above-captioned cause to determine whether Plaintiff Devoris Newson ("Plaintiff") may proceed in forma pauperis. The Court structures this order in three separate parts. Part I will detail issues relating to Plaintiff's "Motion to Proceed In Forma Pauperis," filed on March 4, 2024, ECF No. 2.[1] Part II will analyze the underlying merits of Plaintiff's Complaint, filed on March 4, 2024, ECF No. 1. And Part III will detail how the Court plans to proceed with Plaintiff's other filed cases and any future filings.

## BACKGROUND

Plaintiff is currently incarcerated at the El Paso County Jail Annex in El Paso, Texas, which is in the Western District of Texas. He is currently being held on the following criminal charges in the County of El Paso, Texas: Stalking and Unlawful Possession of a Firearm by a Felon, *State v. Newson*, No. 20240D01344 (384th Dist. Ct., El Paso County, Tex. Mar. 7, 2024), as well as two counts of Aggravated Assault Against a Public Servant, *State v. Newson*,

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

No. 20240D01345 (384th Dist. Ct., El Paso County, Tex. Mar. 7, 2024).  Plaintiff filed the instant

case against Defendants Chase Bank, Raiz Federal Credit Union, El Paso Police Department, El

Paso Sheriff's Department, Gabriel Waldo, Walmart, Verizon Wireless, and AT&T

("Defendants") on March 4, 2024.  Complaint ("Compl."), ECF No. 1.

In his Complaint, Plaintiff alleges multiple causes of action.  Plaintiff claims

violations under 42 U.S.C. Sec. 1981 (equal rights under the law), 42 U.S.C. Sec. 1982 (property

rights for U.S. citizens), 42 U.S.C. Sec. 1983 (civil action for deprivation of rights), 42 U.S.C.

Sec. 1985 (conspiracy to interfere with civil rights), and 42 U.S.C. Sec. 1986 (action for neglect

to prevent).  Compl. 4, 6, ECF No. 1.  As well as the following amendments of the U.S.

Constitution: 1st Amendment, 4th Amendment, 5th Amendment, 8th Amendment, and 14th

Amendment. *Id.*

Plaintiff filed his "Motion to Proceed In Forma Pauperis" ("Mot.") on March 4,

2024, ECF No. 2.  On April 11, 2024, the instant case was referred to Magistrate Judge Robert

Castaneda in the Western District of Texas, pursuant to the El Paso Division's "Standing Referral

Order Regarding Prisoner and Immigration Detainee Civil Rights Cases (Apr. 4, 2016)."

## Part I – THE COURT WILL ALLOW PLAINTIFF TO PROCEED IN FORMA PAUPERIS

### A. Standard to Procced In Forma Pauperis

Under 28 U.S.C. Section 1915, Plaintiffs can request to proceed in forma pauperis

when they cannot afford to pay the filing fees to file their case in federal court.   The statute is

"designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke*

*v. Williams*, 490 U.S. 319, 324 (1989).  The statute states that "any court of the United States

may authorize the commencement . . . of any suit . . . without prepayment of fees or security

therefor, by a person who submits an affidavit that includes a statement of all assets such

prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C.

Sec. 1915(a).

       Judges have wide discretion in deciding whether or not to allow pro se Plaintiffs

to proceed In Forma Pauperis.  Courts consider the cost of the filing fee[2]  and whether the cost

will "result in the applicant suffering undue financial hardship." *Berrios v. Magnus*, 2022 WL

5287782 at *2 (W.D. Tex. Oct. 6, 2022).  "An IFP applicant's income relative to the poverty

guidelines, however, is not dispositive; courts must place that information in the context of the

applicant's overall financial resources." *Id.*  In making this consideration, courts request

information from the party moving to proceed in forma pauperis, such as "a certified copy of the

trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period

immediately preceding the filing of the complaint . . . obtained from the appropriate official of

each prison at which the prisoner is or was confined."  28 U.S.C. Sec. 1915(a)(2).

       Even if a party makes a showing that they are indigent and have no money for the

filing fee, that does not automatically open the doors to the courts.  "There is no absolute right to

be allowed to proceed in forma pauperis in civil matters; rather it is a privilege extended to those

unable to pay filing fees when the action is not frivolous or malicious." *Startti v. United States*,

415 F.2d 1115, 1116 (5th Cir. 1969).  And to this end "[t]o prevent . . . abusive or captious

litigation, Sec. 1915(d) authorizes federal courts to dismiss a claim filed in forma pauperis 'if the

allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.'" *Neitzke*,

---

[2] The current filing fee for any civil action, suit, or proceeding in the Western District of Texas – El Paso Division is $405.  https://www.txwd.uscourts.gov/court-information/fee-schedule/

490 U.S. at 324 (quoting 28 U.S.C. Sec. 1915(d)).  "To the extent that a complaint filed in forma pauperis which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and Sec. 1915(d) both counsel dismissal." *Id.* at 328.

"The trial judge inquiring into the propriety of the IFP status must ascertain what the plaintiff is claiming and *may* make limited assessments of the plaintiff's credibility." *Wilson v. Barrientos*, 926 F.2d 480, 483 (5th Cir. 1991) (emphasis added).  Courts may find a complaint frivolous "if it lacks an arguable basis in law or fact."  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). Courts may also dismiss a claim as frivolous if "the facts are 'clearly baseless, a category encompassing allegations that ae 'fanciful,' 'fantastic,' and 'delusional.'" *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999) (quoting *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)). However, a complaint filed in forma pauperis "is not automatically frivolous within the meaning of Sec. 1915(d) because it fails to state a claim under Rule 12(b)(6)." *Neitzke*, 490 U.S. at 319. "The frivolousness standard, authorizing sua sponte dismissal of an in forma pauperis complaint 'only if the petitioner cannot make any rational argument in law or fact which would entitle him or her to relief, is a 'more lenient' standard than that of Rule 12(b)(6)." *Id.* at 322-23 (quoting Williams v. Faulkner, 837 F.2d 304, 307 (7th Cir. 1988).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002).  "It is left to the discretion of the court to which the application is made to determine whether the petition on its face is frivolous or lacking in merit." *Startti*, 415 F.2d at 1116.

## B. Plaintiff Did Not Comply With Court Orders

The instant case was referred to Magistrate Judge Robert Castaneda in the

Western District of Texas on April 11, 2024. *See* Docket *Devoris Newson v. Chase Bank, et al*,

No. 3:24-CV-00073 (W.D. Tex., El Paso Div., Mar. 4, 2024). On April 23, 2024, Magistrate

Judge Castaneda ordered that "Plaintiff shall FILE a certified trust fund account statement or

institutional equivalent for the six months immediately preceding the filing of this action by May

21, 2024." Order 1, ECF No. 3. Judge Castaneda warned that failure to comply with the Order

"may result in dismissal of [the] complaint pursuant to Federal Rule of Civil Procedure 41(b)."

*Id.* Plaintiff did not, and has not to date, complied with the Court's Order.

The Court notes that Plaintiff has filed three other cases in this district and has not

complied with orders issued in any of these cases. In *Newson v. Douglas et al*, No. 3:24-CV-

00098 (W.D. Tex., El Paso Div., Mar. 25, 2024), Magistrate Judge Anne Berton ordered Plaintiff

to "FILE, by June 3, 2024, a certified trust account statement or institutional equivalent for the

six months immediately preceding the filing of this action." Order 2, ECF No. 2. Plaintiff has

not complied with this Order. In *Newson v. Newson et al*, No. 3:24-CV-00107 (W.D. Tex., El

Paso Div., Apr. 2, 2024), Magistrate Judge Robert Castaneda ordered Plaintiff to "FILE a

certified trust fund account statement or institutional equivalent for the six months immediately

preceding the filing of this action by May 21, 2024." Notice of Deficiency and Order 1, ECF

No. 2. Plaintiff has not complied with this Order. And finally, in another case also styled as

*Newson v. Newson et al*, No. 3:24-CV-00109 (W.D. Tex., El Paso Div., Apr. 3, 2024), Magistrate

Judge Miguel Torres ordered Plaintiff to "FILE a certified trust fund account statement or

institutional equivalent for the six months immediately preceding the filing of this action by May

27, 2024." Notice of Deficiency and Order 1, ECF No. 2.  Magistrate Judge Torres also warned

Plaintiff that failing to comply with this Order "may result in dismissal of [the] complaint

pursuant to Federal Rule of Civil Procedure 41(b)." *Id.*  Once again, to date, Plaintiff has not

complied with this Order.  Plaintiff has not complied with any of the orders issued by the

magistrate judges.

### C.  The Court Will Nonetheless Allow Plaintiff to Proceed In Forma Pauperis

The financial information sought by the magistrate judges is not intended to cause

any extra burden for Plaintiff, but it is necessary for the Court to make a determination as to

whether Plaintiff has the funds to proceed in forma pauperis.  Further, providing the information

requested by the Court is required by law under the Prison Litigation Reform Act ("PLRA").

Section 2 of the PLRA states that "[a] prisoner of a Federal, State, or local institution seeking to

bring a civil action . . . without prepayment of fees or security therefor . . . shall submit a

certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for

the 6-month period immediately preceding the filing of the complaint or notice of appeal."

Prison Litig. Reform Act Sec. 2(a)(2), 42 U.S.C. Sec. 1997e.

Courts *can* and *have* dismissed cases when the Plaintiff does not comply with the

Court's orders regarding proceeding in forma pauperis.  In *Smith v. Martinez,* the Fifth Circuit

held that the district court did not abuse its discretion when it dismissed Plaintiff's case after he

failed to comply with paying the partial filing and service fee of $3.00." 706 F.2d 572, 574 (5th

Cir. 1983).  However, the Fifth Circuit also disfavors automatic dismissal of cases when the

Plaintiff does not provide the Court with the information necessary to proceed in forma pauperis.

In *Hatchet v. Nettles*, the Fifth Circuit held that the district court abused its discretion when it

6

dismissed the inmate's case after he failed to comply with the Court's in forma pauperis order. 201 F.3d 651, 652 (5th Cir. 2000).

### D. Conclusion

Heeding the Fifth Circuit's advice, the Court declines to dismiss Plaintiff's case simply because he has not complied with Judge Castaneda's order or the orders in any of his other cases. Instead, the Court allows Plaintiff to proceed in forma pauperis in order to reach the merits of his claims. Therefore, although Plaintiff has not complied with the order under the PLRA, the Court will nonetheless allow him to proceed in forma pauperis. The Court will now proceed to analyze Plaintiff's claims on the merits.

## Part II – THE COURT DISMISSES ALL OF PLAINTIFF'S COMPLAINTS ON THE MERITS

### A. Plaintiff Alleges a Multitude of Different Causes of Action

Plaintiff describes in detail various incidents in which he believes his rights were violated. His first claim alleges that in November 2023 he opened a Chase Bank account "so that [he] could deposit [his] U.S. Treasury money into it." Compl. 4, ECF No. 1. Plaintiff says that in December 2023 he attempted to cash a bond and the bank "trys (sic) to rob me for over $90,000 dollars and trys (sic) to get me to exchange it for fifty six dollars cash." *Id.* He alleges that the El Paso Police Department was out to get him and was telling the branch manager of the Chase Bank to "deny [him] service." *Id.* He claims that toward the end of December 2023, the branch manager "tells [him] [he is] being denied service because they don't want me to do business with them . . . and because they don't like dealing with blacks." *Id.* He says that the El Paso Police Department "shows up and says [he is] no longer allowed at the bank or I go to jail if I ever return and be charged with trespassing." *Id.*

7

Plaintiff specifically lists the violations as the following: "[t]he constitutional basis for this claim under 42 U.S.C. Sec. 1983 is: 14th amend (sic) denial of equal protection of laws, discrimination, racist. I also assert 1981, 82, 85, and 86 clams for entering a criminal conspiracy to deprive me of my rights of due process and equal protect (sic) of laws. The relief I am seeking for this claim is: $10 million." *Id.*

In his second claim Plaintiff alleges that the police stole his phone, and that "the police, Waldo, Inspire, and my dad had access to all my accounts including my phone . . . they would use all this info and access to steal everything." *Id.* at 5. "They stole my chime, my USAA, setup a venmo account, stole my lawsuits, facebooks, gmails, government electronic I.D." *Id.*

In his third claim Plaintiff alleges that Raiz Credit Union said Sheriff Wiles[3] and the El Paso Police Department told the Credit Union to "get [Plaintiff] to sell [his bond] to them for $56." *Id.* at 5. A bank teller allegedly "comes in and tells [Plaintiff] he's getting the president on the phone, she in turn trys (sic) to convince [Plaintiff] as well because [he's] black with tattoos that the bond is 56 dollars." *Id.* Plaintiff allegedly leaves the branch and receives a phone call from the branch president the next day and told Plaintiff that "she spoke with the U.S. treasury and they confirmed it was only 57 dollars." *Id.* Plaintiff then returns to the Credit Union to "confront" the branch manager and says the branch manager knew "shes (sic) caught and the truth is the bank is all Mexican and all they presumed was that I was an uneducated negro with tattoos on my face." *Id.* And finally on January 25, 2024 Plaintiff allegedly went

---

[3] El Paso County Sheriff

back to the Raiz Credit Union branch and "again EPPD said [he] was not allowed in the bank if [he] came back [he] was going to jail." *Id.*

In his fourth claim Plaintiff says he went to "Walmart to try to get service [on] a new phone [he] tell[s] the guy [his] phone is hacked." *Id.* at 5. Plaintiff says that the clerk at Walmart "processes the order with [his] name backwards on purpose" and claims the same thing had been done months before and "it activated the fraud department." *Id.* Plaintiff allegedly returned home and said that he spoke with his father and his father told him that "[he] and the police had been monitoring [Plaintiff's] phone" and that his father "paid big money to the sheriff department and police to watch [Plaintiff] and never allow [him] to cash these bonds in the city." *Id.* at 6. Plaintiff says that he then contacted Governor Greg Abbott by email and the Chase Bank CEO and "both failed to take action." *Id.*

Aside from these four claims Plaintiff also includes other causes of action in this complaint such as his neighbor Waldo fraudulently purchasing a phone using Plaintiff's account. Compl. 9, ECF No. 1. He also claims that his neighbor Waldo allowed his apartment rental company "Inspire Management" to "break into [his] apartment they watched on camera." *Id.* In this Complaint, Plaintiff also alleges various violations of state law. He claims that the city of Kansas City in Missouri, as well as the "governor" of Kansas City, Missouri, "denied access to courts." *Id.* at 14.

**B. Allegations Must Meet Minimum Pleading Standards or will otherwise be dismissed**

In order to meet minimum pleading standards, claims must have some basis in fact and law that show that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8. "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if

the complaint alleges the violation of a legal interest which clearly does not exist." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). And "[a] complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* In addition, Courts will typically evaluate claims under the failure to state a claim standard of Federal Rule of Civil Procedure 12(b)(6), and in specific cases involving requests to proceed in forma pauperis, Sec. 1915(d)'s frivolousness standard.

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677—78 (2009). The Rule 8 standard does not require "detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (internal citations omitted). These "facts must permit the court 'to infer more than the mere possibility of misconduct." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A complaint that offers "naked assertion[s] devoid of further factual enhancement" also does not pass muster under Rule 8. *Iqbal*, 556 U.S. at 678. The factual allegations that a plaintiff pleads "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). And, even if recovery is "very remote and unlikely," Courts will allow claims to proceed so long as the allegations are well pleaded. *Id.* at 556.

Plaintiffs must also offer more than mere conclusions. In *Iqbal*, the Supreme Court held that "[i]t is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 556 U.S. at 681. The Court in *Brady* held that "[a] complaint lacks an arguable basis in law if it is based on an

10

indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Brady*, 192 F.3d at 507.

### C. The Court considers different factors when evaluating claims under Rule 12(b)(6) and Section 1915(d)

"Under Rule 12(b)(6)'s failure-to-state-a-claim standard—which is designed to streamline litigation by dispensing with needless discovery and factfinding—a court may dismiss a claim based on a dispositive issue of law without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one, whereas under Sec. 1915(d)'s frivolousness standard—which is intended to discourage baseless lawsuits—dismissal is proper only if the legal theory . . . or the factual contentions lack an arguable basis." *Neitzke*, 490 U.S. at 319. "Under the 12(b)(6) standard all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Hale*, 642 F.3d at 498. This standard allows the Court "to determine whether there is a genuine issue for trial . . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed,'" *Id.* at 252 (internal citations omitted). Without more, the claim cannot pass muster.

11

And Sec. 1915(d)'s standard "authorizes sua sponte dismissal of an in forma pauperis complaint 'only if the petitioner cannot make any rational argument in law or fact which would entitle him or her to relief," *Neitzke*, 490 U.S. at 322—23 (quoting *Williams v. Faulkner*, 837 F.2d 304, 307 (1988). The Sec. 1915(d) standard is a "more lenient standard than that of Rule 12(b)(6)." *Id.* As Courts of Appeals have recognized, Sec. 1915(d)'s term "frivolous, when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Id.* at 325. "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.* at 328.

### D. Plaintiff's Claims Do not meet the minimum pleading standards under Rule 8 and Should Be Dismissed under Section 1915(d) and Rule 12(b)(6)

Plaintiff's claims don't meet the minimum pleading standards under Rule 8. Plaintiff's "complaint" does not "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" Fed. R. C. P. 8; *see also Iqbal*, 556 U.S. at 677—78. Plaintiff's claims are anything but "short and plain" and instead it is nearly impossible to tease out what the actual claims are. Plaintiff argues that he was discriminated against on the basis of his race at Chase Bank and at Raiz Credit Union, *see* Compl. 4—5, ECF No. 1, but provides no reasoning or factual basis to support this. Instead, he claims that the bank, credit union, and law enforcement have all conspired against him to not allow him to cash a bond he claims is worth $90,000." *Id.* It appears, based on even what Plaintiff alleges, that Chase Bank and Raiz Credit Union may have threatened to criminally trespass Plaintiff from their establishments, but without a constitutional hook or a violation of Plaintiff's rights, he does not present a cause of action that would entitle him to some relief. Plaintiff also alleges that his neighbor Waldo illegally

12

purchased a phone using his account, Compl. 9, ECF 1, and that the customer service associates
at Walmart "processe[d] the order with [his] name backwards on purpose," Compl. 6. ECF No.
1. Plaintiff does not articulate what right was violated or what relief he is entitled to for either of
these claims, and again, the Court cannot import its own reasoning for these issues.

As previously stated, Plaintiff alleges that his rights were violated under multiple
causes of action. *See* Background, *supra*. The Court will not explore each of these causes of
action in detail, but the Court will address causes of action under 42 U.S.C. Sections 1983 and
1985, as well as the 14th Amendment of the United States Constitution as the Court believes
these are the most salient causes of action. As for the claims that the Court is not going to
analyze in detail, the Court does not believe that Plaintiff has provided any details that would
substantiate these claims at all.

## 1. Plaintiff does not demonstrate a cause of action under 42 U.S.C. Section 1983 or the 14th Amendment

"Section 1983 makes liable anyone who 'under color of state law, deprives a
person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Cuvillier
v. Taylor*, 503 F.3d 397, 402 (5th Cir. 2007) (quoting *Blessing v. Freestone*, 520 U.S. 329, 340
(1997). "The Supreme Court has held that this provision protects certain rights conferred by
federal statutes." *Id.* Further, "[v]iolation of a federal law is insufficient for redress through
section 1983; a plaintiff must assert violation of a federal right." *Id.* at 402—403. The Supreme
Court provides guidance as to how to determine whether a statutory provision gives rise to an
individual federal right. "First, Congress must have intended that the provision in question
benefit the plaintiff." *Id.* at 403. Next, "the plaintiff must demonstrate that the right assertedly
protected by the statute is not so 'vague and amorphous' that its enforcement would strain

13

judicial competence." *Id.* (quoting *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479

U.S. 418, 431−432 (1987). And finally, "the statute must unambiguously impose a binding

obligation on the States." *Id.* To put it bluntly, the "violations" that Plaintiff alleges do not meet

*any* of these elements.

Plaintiff attempts to make a claim under 42 U.S.C. Sec. 1983 because he was

denied equal protection under the 14th Amendment. Compl. 4, ECF No. 1. Plaintiff alleges that

he was discriminated against based on the fact he is in "the class of black fathers looking for

their children in Kansas City, Missouri." Compl. 17, ECF No. 1. Plaintiff states that the last

time he had seen his children was in 2019 in Kansas City, Missouri. Compl. 15, ECF No. 1. He

claims that he was not able to contact his children, and so in December 2023 he contacted the

"KCMO PD" ("Kansas City Police"), and they told him they would do a welfare check on the

children. *Id.* He says that he continued to call the Kansas City Police and wanted to report his

children missing. *Id.* He then states that the Kansas City Police told him that he would have to

go through the courts in his own state to do that. *Id.* He admits that he continued to call the

Kansas City Police and called the District Attorney and the governor of Missouri, all to no avail.

*Id.* He states that he discovered "through research KCMO will take action 90 percent of the time

for women in the same matter but not for black males which is common custom." *Id.*

"The Equal Protection Clause of the Fourteenth Amendment commands that no

State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of

Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432 (1985) (internal citations omitted).

*Loving v. Virginia* held that the "[c]lear and central purpose of the Fourteenth Amendment was to

eliminate all official state sources of invidious racial discrimination in states." 388 U.S. 1, 11 (1967). "At the very least, the Equal Protection Clause demands that racial classifications . . . be subjected to the 'most rigid scrutiny." *Id.* (internal citations omitted).

Plaintiff alleges that the Kansas City Police Department violated his rights. The class that Plaintiff puts himself in is "black fathers looking for their children in Kansas City, Missouri." Compl. 17, ECF No. 1. The class in which Plaintiff places himself is not a suspect classification or even a quasi-suspect classification under Fourteenth Amendment jurisprudence. Plaintiff simply states that he "discovered through research KCMO will take action 90 percent of the time for women in the same matter but not for black males which is common custom." Compl. 15, ECF No. 1. Not only are Plaintiff's allegations against the Kansas City Police Department rife with conclusions that are not supported by facts, which goes to the analysis under 12(b)(6), but he also "cannot make any rational argument in law or fact which would entitle him . . . to relief," *Neitzke*, 490 U.S. at 322—23, which is the standard under Sec. 1915(d). His allegations are threadbare and do not create viable cause of action under the Fourteenth Amendment nor under 42 U.S.C. Sec. 1983.

**2. Plaintiff does not demonstrate a cause of action under 42 U.S.C. Section 1985(3)**

"To state a claim under Sec. 1985(3), [Plaintiff] must allege that two or more persons conspired to directly or indirectly, deprive him of the equal protection of the laws or equal privileges and immunities under the laws." *Newsome*, 301 F.3d at 232. "Further, to state a Sec. 1985(3) claim, [Plaintiff] must allege that the conspirators were motivated by [his] race." *Id.*

Plaintiff describes the situation at Chase Bank when he was attempting to deposit

15

what he says was a $90,000 bond.  Compl. 4, ECF No. 1.  He also accuses the bank of trying to

rob him of this money.  *Id.*  He claims that he was denied service and that the branch manager

specifically was told by his "associates" at the El Paso Police Department "that the chiefs wants

him to deny [Plaintiff] service."  *Id.*  He also includes that the branch manager tells him "[he is]

being denied service because they don't want [him] to do business with them" and "because they

don't like dealing with blacks."  *Id.*  Plaintiff alleges that he was then trespassed from the Chase

Bank location.  *Id.*

Plaintiff makes similar claims against the employees of Raiz Federal Credit

Union.  After being denied at Chase Bank, Plaintiff attempted to deposit that same "$90,000

bond" (which both banks told him was only worth $56) at Raiz Federal Credit Union.  Compl. 5,

ECF No. 1.  He claims that "the bank manager had his teller bring the bond to a private room

where he spoke with the chief of EPPD and Sheriff Wiles, they told him to get me to sell it to

them for $56."  *Id.*  He is once again alleging that the bank employees are in cahoots with the

local law enforcement in El Paso and are conspiring against him to prevent him from depositing

his bond.  Plaintiff also claims that the branch manager for Raiz Federal Credit Union "trys (sic)

to convince [him] as well because [he's] black with tattoos that the bond is 56 dollars."  *Id.*  And,

finally, Plaintiff states "the truth is the bank is all Mexican and all they presumed was that [he]

was an uneducated negro with tattoos on [his] face."  *Id.*  He says that he was denied service at

Raiz Federal Credit Union and was criminally trespassed from that location as well.  *Id.*

Once again, these allegations do not survive analysis under Rule 12(b)(6) or

Section 1915d) and therefore must be dismissed.  Plaintiff's allegations are, at best, conclusory

and "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. At worst, Plaintiff's claims are

"frivolous or malicious" and therefore warrant dismissal under Sec. 1915(d).  *Hicks*, 69 F.3d at

24.

### E.  Conclusion

Plaintiff's complaint is rife with fantastical accusations and legal conclusions, yet

starved for well-pleaded factual allegations that would assist the Court in granting him any relief.

The Court finds that Plaintiff Devoris Newson has not provided specific facts that establish a

genuine issue for a jury to resolve regarding his 42 U.S.C. Secs. 1981, 1982, 1983, 1985, and

1986 claims, as well as violations under the First, Fourth, Fifth, Eighth and Fourteenth

Amendments of the United States Constitution.

### Part III – THE COURT WILL IMPOSE A PRE-FILE INJUNCTION FOR ALL FUTURE FILINGS

The Court takes notice of the volume of cases Plaintiff has filed in recent months.

*See Matter of Missionary Baptist Found. of Am., Inc.*, 712 F.2d 206, 11 (5th Cir. 1983) ("A court

may take judicial notice of the record in prior related proceedings and draw reasonable

inferences therefrom.").  Plaintiff has filed no less than four actions in the El Paso Division of the

Western District of Texas in the past five months alone.[4]  In addition to his filings in federal

court, Plaintiff has also filed multiple cases in the Court of Appeals Eighth District of Texas.[5]

---

[4]*Newson v. Chase Bank, et al*, No. 3:24-CV-00073 (W.D. Tex., El Paso Div., Mar. 4, 2024); *Newson v. Douglas, et al*, No. 3:24-CV-00098 (W.D. Tex. El Paso Div., Mar. 25, 2024); *Newson v. Newson, et al*, No. 3:24-CV-00107 (W.D. Tex., El Paso Div., Apr. 2, 2024); *Newson v. Newson, et al*, No. 3:24-CV-00109 (W.D. Tex., El Paso Div., Apr. 3, 2024); *Newson v. Wiles*, No. 3:24-CV-00191 (W.D. Tex., El Paso Div., June 6, 2024).  On May 22, 2024, the District Clerk's Office for the Western District of Texas – El Paso Division was forced to open yet another case for Plaintiff in order to record all of the letters he had sent this Court.  These letters were sent on March 4, 2024, two on May 4, 2024, two on May 7, 2024, May 8, 2024, May 10, 2024, May 13, 2024, May 17, 2024, May 20, 2024, May 22, 2024, May 24, 2024, June 3, 2024, two on June 4, 2024, June 7, 2024, and the most recent letter was dated June 14, 2024.  *See* Docket *In Re Devoris Newson*, 3:24-MC-00173 (W.D. Tex., El Paso Div., May 4, 2024).

[5] See *Devoris Newson v. State*, No. 08-24-00112-CR (Tex. App. – El Paso May 13, 2024, no pet.) (per curiam) (mem. op.); *Devoris Newson v. State*, No. 08-24-00113-CR (Tex. App. – El Paso May 13, 2024, no pet.) (per curiam)

The Court of Appeals states that it "has continued to receive additional documents from Mr.

Newson with various titles ("Judicial Notice" "Omnibus Motion" "Notice of Appeal"

"Additional Claims" "Sworn Declaration"). *See Devoris Newson v. State*, No. 08-24-00112-CR,

at *2 (Tex. App. – El Paso May 13, 2024, no pet.) (per curiam) (mem. op.). The Court of

Appeals has explained to Plaintiff that it does not have jurisdiction over any of Plaintiff's claims

as there has been no final judgment entered and because they are largely pretrial matters. *Id.* at

*3. The Court of Appeals held that it will "no longer file [Plaintiff's] documents or create a new

proceeding listing [Plaintiff] as the appellant/relator/petitioner/applicant, unless the Chief Justice

of this Court or the designee of the Chief Justice of this Court has reviewed it and determined

that it at least arguably invoked the jurisdiction of this Court." *Id.* at *5.

       In a Memorandum Opinion dated May 24, 2024, the Court of Appeals held that

"Mr. Newson did not provide an appealable order or other legal ground forming a basis for this

Court to have jurisdiction over what he attempts to appeal." *Devoris Newson v. State*, No. 08-24-

00112-CR at *2 (Tex. App. – El Paso May 13, 2024, no pet.) (per curiam) (mem. op., not

designated for publication). This same holding is echoed in nearly every memorandum opinion

issued by the Court of Appeals for the Eighth District. For example, in a memorandum opinion

dated April 12, 2024, the Court of Appeals held that "Appellant's pro se notice of appeal does not

---

(mem. op.); *Devoris Newson v. State*, No. 08-24-00114-CR (Tex. App. – El Paso Apr. 29, 2024, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-24-00115-CR (Tex. App. – El Paso Apr. 29, 2024, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-24-00061-CR (Tex. App. – El Paso Apr. 12, 2024, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-24-00062-CR (Tex. App. – El Paso Apr. 12 2024, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-23-00258-CR (Tex. App. – El Paso Oct. 16, 2023, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-23-00259-CR (Tex. App. – El Paso Oct. 16, 2023, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-23-00212-CR (Tex. App. – El Paso Aug. 22, 2023, no pet.) (mem. op., not designated for publication); *Devoris Newson v. State*, No. 08-23-00213-CR (Tex. App. – El Paso Aug. 22, 2023, no pet.) (mem. op., not designated for publication).

specify the order he is attempting to appeal," *Devoris Newson v. State*, No. 08-24-00062-CR at *2 (Tex. App. – El Paso Apr. 12, 2024, no pet.) (mem. op., not designated for publication).

This Court "has no desire to deter any litigant from advancing any claim or defense which is arguably supported by existing law, or any reasonably based suggestion for its extension, modification, or reversal." *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986). Certain positions taken by litigants "cannot be considered as frivolous, although they may be unsuccessful and indeed may be given short shrift. But claims and defenses which fall outside of this broad umbrella may prove frivolous." *Id.* Plaintiff's claims are without merit and are frivolous. Although Plaintiff's filings are pro se, this is "no impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Id.*

District courts have "jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (internal citations omitted). However, any such pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.* (internal citations omitted). When a litigant reaches a particular "level of vexatiousness," a court may issue a pre-filing injunction which then "bar[s] the plaintiff from filing any additional actions without first obtaining leave to do so from the district court." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir. 1986).

In light of Plaintiff's practice of bringing multiple frivolous lawsuits, *see supra* footnotes 4 and 5, submitting dozens of letters to the Court, *id.*, not complying with previous

19

court orders, *see supra* Section I.B., the Court concludes that the type of pre-filing injunction described in *Day v. Allstate* is appropriate here.

Thus, pursuant to its statutory authority under 28 U.S.C. Sec. 1651(a), the Court restricts Plaintiff from filing any further pleadings, papers, or documents with the Court without first obtaining leave of Court.

Accordingly, IT IS **ORDERED** that Plaintiff Devoris Newson's "Motion to Proceed In Forma Pauperis," ECF No. 2, is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of the Court shall **FILE**, without prepayment of the filing fee, Plaintiff Devoris Newson's "Complaint," ECF No. 1.

IT IS FURTHER ORDERED that the instant cause is **DISMISSED WITHOUT PREJUDICE.**

IT IS FURTHER ORDERED that all pending motions, if any, are **DENIED AS MOOT.**

IT IS FURTHER ORDERED that the Clerk shall **RETURN** to Plaintiff Devoris Newson all documents relating to this litigation that he sought to have filed in support of his "Motion to Proceed in Forma Pauperis," ECF No. 2.

IT IS FURTHER ORDERED that in light of Plaintiff Devoris Newson's vast litigation history that has been deemed to be without merit, the Court **FINDS** Plaintiff Devoris Newson to be a vexatious litigant.

IT IS FURTHER ORDERED that Plaintiff Devoris Newson **SHALL NOT FILE** any pleadings, papers, or documents with the Court without first obtaining **LEAVE** of the Court.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this matter.

SIGNED this ___*10*___ day of **July 2024**.

_____

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

21